UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     v.                                         CR. NO. 14-426 (JMF)

JEFF WILLIAMSON,

     Defendant.

## DETENTION MEMORANDUM

This matter comes before me upon the application of the United States that the defendant be detained pending trial. After a hearing, the government's motion was granted, and this memorandum is submitted to comply with the statutory obligation that "the judicial officer shall—include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### FINDINGS OF FACT

1. The investigation began on June 10, 2014, when Deputy Marshal Mustapha was notified of calls that had been made the previous day, by the defendant, to Chief Judge Roberts of the U.S. District Court for the District of Columbia.

2. The defendant vowed to "butt fuck the President" and the Attorney General. The defendant also made reference to the Attorney General as a "pet monkey." President Obama, the White House, and Attorney General Eric Holder were all mentioned specifically by name at least once in the string of phone calls, during which the defendant became progressively more vulgar and threatening.

3.  The defendant also referenced an intense conflict he had with FBI Agent Brian Schmidt (out of Colorado) in 2005.

4.  The defendant left six successive voicemails for Chief Judge Roberts and had one conversation with a person who answered the phone in his office.

5.  On June 12, three days after Chief Judge Roberts received these voicemails, two of Mustapha's colleagues visited the defendant in the vicinity of the 1700 block of Pennsylvania Avenue.

6.  The defendant acted "cordially" in response to admonishments by the FBI officers and instructions to cease calling Chief Judge Roberts. The agents told the defendant that continuing to call the judge would get him nowhere, and the defendant agreed to stop calling Chief Judge Roberts. The two agents left the phone number of the CTOC, which is the FBI's command center, with the defendant, and told him to call it if he had any further issues or questions. Later that night, the defendant began barraging the CTOC with repeated, profanity-laced calls, accusing the FBI of entrapping, harassing, and gang stalking him. In spite of the FBI's order to stop calling Chief Judge Roberts, the defendant also called the judge that night.

7.  On June 2, 2014, the defendant left a string of fourteen voicemail messages on the phone of an Assistant US Attorney, in which he complained that he was being entrapped and "gang stalked" by the FBI. Mustapha was notified of this voicemail bombardment when he began his investigation on June 10, 2014.

8. On June 19, 2104, the defendant called 911, and an audio recording of the call indicates defendant said the following:

> I'm being stalked down here for this website . . . I'm an American citizen. They're trying to provoke me and entice me into violence. Uh, so they can prosecute me and put me into prison. That's entrapment. Now, how 'bout if you call the FBI and tell 'em, how 'bout if I go shoot FBI Agent Brian Schmitt in his fuckin' head? Is that gonna stop this gang stalkin' ring? How 'bout if I go shoot FBI Agent Brian Schmitt in his mother fuckin' head? . . . Call the Washington, D.C. FBI Field Office and just fuckin' tell those motherfuckers that I'm gonna shoot that motherfucker in his fuckin' head . . . I have fuckin' reported this, they're still doin' it, and if it doesn't stop I'm gonna' kill that fuckin' FBI Agent. Now what? . . . I will shoot that fuckin' FBI Agent in his fuckin' face. Now what?

9. While the defendant does not state his name in this 911 call, repeated reference to his self-published websites parallels their mention in the bulk of the calls and voicemails, in which the defendant does identify himself by name. According to Mustapha, there is an undeniable similarity in the voices of the defendant and the man making the 911 call. In addition, the caller made repeated threats against FBI Agent Schmidt, the same individual the defendant singled out as his primary FBI antagonist.

10. In the 911 call, the defendant also threatens to detonate a smoke bomb in "a secret place" somewhere in Washington, D.C.

11. The Marshals traced the phone number's address of registration to 1041 Wisconsin Avenue, the address of a shelter run by Georgetown's University

3

Ministry. A former Texas probation officer (who used to work with the defendant) communicated to D.C. law enforcement officials that he believed the defendant was living in a shelter at this address. A law enforcement database also showed that the phone number from which the call was placed was registered to an account belonging to the defendant.

12. The Deputy US Marshals then secured a warrant for the defendant's arrest. When Mustapha and a team of FBI agents went to the address of the shelter in which the defendant was purportedly staying, a worker there told the agents that he had left 20 minutes earlier, wearing a green shirt and carrying three black bags.

13. Using cell site location data to pinpoint the area from which the defendant's 911 call was made, the agents traced his location to near Lafayette Park, at the intersection of 16th and H Streets, Northwest. When Mustapha and his team arrived at Lafayette Park, their colleague, Agent McFleming, had already handcuffed and seated the defendant.

14. Agent Dunham asked the defendant if he had any family in the area who might be able to hold onto his bags while he was being held. The defendant indicated that he did not have any family in the area, and suggested that the agents put his bags "in the fucking FBI evidence room." Before transporting the defendant, Agent Christie performed a pat down to ensure the defendant was not carrying any weapons or dangerous articles. As Agent Christie was patting him down, Williamson asked, "Why don't you FBI pussies take off my handcuffs, so I can gouge out your eyes and rip out your trachea? I eat guys like you for lunch."

15. Williamson's government identification indicated that he was from Texas, and thus that he is not a permanent resident of the Washington, D.C. area.

## REASONS FOR DETENTION

An examination of the factors required to be considered by 18 U.S.C. § 3142(g) compels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure the safety of the community and his detention is, therefore, appropriate.

## The Statutory Standard

The government seeks this defendant's pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(A), which authorizes the pre-trial detention of a defendant who, like this defendant, is charged with a crime of violence. In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer is to consider:

1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2. The weight of the evidence;

3. The history and characteristics of the person, including

    a. His character, physical and mental condition, family ties, employment, financial resources, length of residence in the community and community ties;

    b. Past conduct, history relating to drug or alcohol abuse;

    c. Criminal history;

5

>   d. Record concerning appearance at court proceedings;
>
>   e. Whether, at the time of the current offense or arrest, the person was on probation, parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State or local law;
>
> 4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142.

An examination of these factors compels the conclusion that there is clear and convincing evidence that defendant's release on any condition or combination of conditions will not reasonably assure the safety of the community and his detention is, therefore, appropriate.

**The nature and circumstances of the offense charged, including whether the offense is a crime of violence, involves a narcotic drug, or involves a firearm.** The defendant is charged with Threats Against a Federal Official, which is certainly a crime of violence.

**Defendant's character, physical and mental condition, family ties, employment, financial resources, and length of residence in the community.** As indicated above, the defendant has come recently to the District of Columbia, where he lives in a shelter. His convictions are from three different states: Texas, California and Mississippi. He seems to have no real roots in any community and is unemployed.

**The weight of the evidence.** At this point, the government's case is overwhelming. Indeed, the conversation quoted above was taped and I heard it. Having heard the defendant's voice in the courtroom, I am certain that it is the same person.

**History relating to drug or alcohol abuse.** Defendant has not been tested in the past 180 days.

6

**Record concerning appearance at court proceedings and prior criminal record and whether on probation or parole at the time of the present offense.**  Defendant was convicted of Threatening Communications in Interstate Commerce and was sentenced to 42 months confinement.  When he was released, he violated the terms of his supervised release.  His supervised release was revoked and he was sentenced on November 29, 2013.  He has also been convicted of Trespassing in California and of False Pretenses and of Obtaining a Controlled Substance by Misrepresentation in Mississippi.

## CONCLUSION

The Court must weigh all of the pertinent factors and provide a detailed explanation of the reasoning behind its ultimate conclusion.  U.S. v. Nwokoro, 651 F.3d 108 (D.C. Cir. 2011).  In this case, a weighing of the pertinent factors compels the conclusion that the defendant should be detained pending trial.  Defendant faces an overwhelming case, has no roots in this or any other community and has a serious criminal record.  His supervised release was revoked, robbing me of any confidence that he would be any more faithful to the conditions I would set than he was to the conditions of his supervised release.

More significantly, I consider this defendant a dangerous individual.  He has a vengeful, murderous obsession with a particular FBI agent.  He threatened another agent with violence and bragged of his strength.  He is convinced that he has been the subject of some government vendetta and his paranoia and desire to avenge, by violence, the wrongs done him creates an obvious danger to law enforcement, particularly agent Schmidt.  Indeed, his language suggests to me that he is a danger to figures of authority in general, including the President and the Attorney General.

I therefore find by clear and convincing evidence that there are no conditions or combination of conditions I could set which would reasonably assure the safety of the community and will therefore, order the defendant detained without bond pending trial.

/S/
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE